UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON


CIVIL ACTION NO. 10-129-GWU


BEVERLY J. SINCLAIR,                                      PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                         DEFENDANT.


## INTRODUCTION

Beverly Sinclair brought this action to obtain judicial review of an unfavorable

administrative decision on her application for Disability Insurance Benefits (DIB).

The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
      activity, does he have any "severe" impairment or combination
      of impairments--i.e., any impairments significantly limiting his
      physical or mental ability to do basic work activities?  If not, a
      finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine
      whether the claimant's severe impairment(s) or combination of
      impairments meets or equals in severity an impairment listed
      in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.  At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.  If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Sinclair, a 47-year-old former apartment manager, veterinarian's receptionist, and administrative clerk with a high school education, suffered from impairments related to a depressive disorder, anxiety disorder, a personality disorder, a past history of substance abuse (in remission) and degenerative disc disease of the back (being status post back surgery in November, 2000).  (Tr. 19-20, 36-37).  While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work.  (Tr. 31, 36).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 37-38).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 37).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence.  However, the current record also does not mandate an immediate award of DIB.  Therefore, the court must grant the plaintiff's motion for summary judgment, in so far as it seeks a remand of the action for further consideration, and deny that of the defendant.

The hypothetical question initially presented to Vocational Expert Robert Breslin included restrictions noted by Psychologist Ilze Sillers in Exhibit 8F such as a limitation to simple instructions and non-detailed tasks and  an inability to maintain concentration for more than two-hour segments over an eight-hour period.  (Tr. 1008).  The individual would be able to interact appropriately with supervisors and coworkers in a task-oriented setting with contact that was casual and infrequent. (Id.).  In response, the witness identified a significant number of jobs in the national economy which could still be performed.  (Id.).  The ALJ then inquired whether the mental limitations indicated by Psychologist George Rogers, who testified at the hearing as a medical advisor, would affect the available job base.  (Tr. 1008-1009). These restrictions included a limitation to working alone or with only a couple of other people in a low stress environment involving a simplistic, repetitive work situation.  (Tr. 990-991).  Breslin testified that these restrictions were essentially consistent with those previously presented and that there would be no change in the job numbers.  (Tr. 1009).  The ALJ then presented the mental limitations of Psychologist James Rosenthal.  (Id.).  These restrictions included a "mild" limitation

6

relating to bosses, coworkers and the general public and sustaining attention and concentration to complete daily work tasks, and a "moderate" limitation of ability to tolerate the stress of day-to-day employment.  (Tr. 271).  Breslin again indicated that the previously cited jobs could still be performed.  (Tr. 1009).  The ALJ then asked the expert to consider the physical restrictions identified by Dr. Martin Fritzhand at pages six through eight of his report.  (Tr. 1011).  These included an inability to lift more than 50 pounds frequently and 20 pounds continuously, sit for more than six hours a day in increments of two hours, and stand or walk for more than a total of four hours a day in one-hour increments.  (Tr. 727-729).  The witness indicated that the previously cited jobs could still be performed since they were all at the light level.  (Tr. 1011).  The ALJ cited the testimony of Breslin in support of the administrative decision.[1]

The hypothetical factors presented by the ALJ to Breslin did not fairly characterize his physical condition as required by Varley.  In assessing Sinclair's residual functional capacity, the ALJ indicated that she was relying primarily upon the opinion of Dr. Arthur Lorber.  (Tr. 27).  Dr. Lorber testified at the plaintiff's first administrative hearing as a medical advisor.  (Tr. 957-977).  The physician opined

---

[1]The ALJ also presented the mental restrictions of Psychologist Robert Noelker, the mental restrictions of Dr. Thor Tangvald, and Licensed Clinical Social Worker Mandy Bilyeu, as well as the physical restrictions of Dr. Michael Grefer to Breslin.  (Tr. 1009-1010).  The expert indicated that no jobs would be available in response to these restrictions.  (Id.).

that the plaintiff would be limited to light level work, restricted from a full range by such non-exertional restrictions as an inability to ever crawl, a need to avoid exposure to unprotected heights and dangerous, moving machinery, a need to avoid concentrated exposure to vibration, and an inability to ever climb ladders, ropes or scaffolds. (Tr. 965-966). The ALJ included all of these physical limitations in her residual functional capacity assessment. (Tr. 31). However, despite the ALJ's purported reliance upon Dr. Lorber's physical restrictions, these were not presented to Breslin. The claimant asserts that the ALJ's failure to include all of these limitations which she purported to rely upon was reversible error and the undersigned must agree.

The ALJ also cited the opinion of Dr. Martin Fritzhand, an examining consultant, as being supportive of the administrative denial decision. (Tr. 31-32). As previously noted, the ALJ included the physical restrictions found by Dr. Fritzhand from pages six through eight of his report in the hypothetical question presented to the vocational expert. However, the doctor indicated that Sinclair would be unable to more than occasionally climb ladders or scaffolds on page nine of his report and this was not considered by Breslin. (Tr. 730). Therefore, the physical factors presented to the vocational expert were also not consistent with the opinion of Dr. Fritzhand and, so, a remand of the action for further consideration is required.

Dr. Michael Grefer, Sinclair's treating orthopedic surgeon, was the only other physician of record to identify specific physical limitations.  Among the restrictions reported by Dr. Grefer were an inability to lift more than three to five pounds, stand or walk for more than a total of one hour a day in 15 minute intervals, sit for more than five hours a day in 30 minute intervals, an inability to ever perform postural activities, a restricted ability to reach, feel, handle and push or pull, and a need to avoid exposure to heights, moving machinery and vibration.  (Tr. 844-846).  Despite his status as a treating source, the ALJ rejected Dr. Grefer's opinion in favor of that of Dr. Lorber, the non-examining medical advisor.  (Tr. 27).  The plaintiff argues that this action was erroneous and asserts that since the vocational expert testified that no jobs could be performed by one suffering such restrictions,  an award of DIB is appropriate.  (Tr. 1011).  However, an ALJ may rely upon the opinion of a non-examiner over that of an examining source when the examiner clearly states the reasons for his differing opinion.  Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).  In the present action, Dr. Lorber, who was also an orthopedic specialist (Tr. 958), noted a number of reasons why he did not agree with the opinion of Dr. Grefer.  Dr. Lorber reported that among the medical factors cited by Dr. Grefer in support of his restrictions was multi-level degenerative disc disease with annular bulging at C2-C3.  (Tr. 844, 971).  The expert reported that this was actually a fairly common finding in individuals of the claimant's age and there was no sign of neural impingement.  (Tr. 971).  Dr. Lorber stated that these findings would not cause

9

significant impairment of function. (Tr. 972). Foraminal narrowing at C4-C5, foraminal stenosis, and spondylotic changes status post L5-S1 laminectomy would also not be of great significance. (Tr. 844, 972). The doctor indicated that many individuals functioned at high levels with post-operative changes. (Tr. 972). The plaintiff had returned to work for three years after the laminectomy had been performed and the evidence of ongoing radiculopathy was said to be insignificant. (Id.). Dr. Lorber did not believe the diagnosis by Dr. Grefer of post laminectomy syndrome to be significant. (Tr. 973). The spasm, muscle weakness and decreased reflexes identified by Dr. Grefer were said to be not well-documented in the record. (Tr. 844, 973). Epidural fibrosis around the right SI root was said not to be a new finding but would have developed immediately after the surgical procedure. (Id.). It was described as a common finding and of no great significance. (Tr. 973). Scoliosis appeared to be very minimal and tendinitis was not well-established. (Tr. 844, 973). Therefore, the ALJ properly rejected the opinion of Dr. Grefer in favor of that of Dr. Lorber.

Dr. Gina Grove, another treating source, opined that Sinclair was totally disabled in April of 2007. (Tr. 838). Such an opinion goes to the ultimate issue of disability and, so, was not binding on the ALJ under the federal regulations at 20 C.F.R. § 404.1527(e)(1).

The ALJ determined that Sinclair's problems with hemachromatosis and liver problems, diabetes mellitus, peripheral neuropathy and carpal tunnel syndrome did

not constitute "severe" impairments imposing functional limitations on the plaintiff. (Tr. 20).  In reaching this conclusion, the ALJ relied in part upon the opinion of Dr. Lorber.  (Tr. 964-966).  The claimant asserts that the ALJ should not have relied upon the opinion of Dr. Lorber in assessing these conditions because these were outside his area of expertise as an orthopedic specialist.   However, the mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown.  Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988).  Sinclair has not cited specific restrictions in excess of those found by Dr. Lorber which relate specifically to these conditions.  The only doctor of record to identify more severe specific physical limitations was Dr. Grefer, himself an orthopedic specialist.  The plaintiff testified that she stopped receiving treatment for hemachromatosis in 2001 and that her current treating physician, Dr. Christine Chadwell, was not providing treatment for this condition.  (Tr. 961-962).  With regard to liver problems, the claimant failed to cite any sign of ascites or significant elevations of bilirubin.  (Tr. 964).   In September of 2003, Dr. Daniel Fagel, a treating source at Tri-State Gastroenterology Associates, reported a normal liver profile following a period of abstinence from alcohol.  (Tr. 230).  In September of 2005, Dr. Fagel indicated that her most recent blood work revealed a normal liver profile and normal iron levels. (Tr. 506).  Dr. Fagel hoped that the claimant would soon find a job which provided insurance coverage and, so, obviously thought she could be employed despite her liver problems.  (Id.).  The plaintiff has not disputed Dr. Lorber's assertion that the

11

record indicates that her diabetes mellitus is under good control.  (Tr. 964-965).

With regard to peripheral neuropathy, the expert noted that carpal tunnel syndrome

had been diagnosed on the right based on a December, 2004 EMG.  (Tr. 965).  Dr.

Lorber noted that the claimant herself declined treatment for carpal tunnel syndrome

and stated she could get along with her symptoms.  (Tr. 353, 965).  Dr. Robert

Brown, a non-examining medical reviewer, opined that carpal tunnel syndrome was

not a "severe" impairment and Sinclair has not challenged his credentials to make

such a determination.  (Tr. 373).  Therefore, the court finds no error with the current

ALJ's finding that these conditions were not "severe" impairments.[2]

The ALJ dealt properly with the evidence of record relating to Sinclair's

mental condition.    Psychologist George Rogers testified at the second

administrative hearing as a medical expert.  (Tr. 983-1007).  Rogers opined that the

plaintiff's mental problems would not meet or equal the requirements of a Listing.

(Tr. 986-987).  The expert opined that the claimant would need to avoid working

with more than "a couple" of other people in a low stress job situation and would be

limited to simple, repetitive work.  (Tr. 990-991).    The ALJ's findings were

consistent with this opinion.

---

[2]Upon remand, the claimant will have the opportunity to present additional
evidence relating to these conditions which might prove that they are "severe"
impairments.

Psychologist James Rosenthal examined Sinclair and diagnosed a major depression, alcohol dependence in remission and a personality disorder. (Tr. 271). The examiner opined that the plaintiff would have no impairment in dealing with instructions, a "mild" impairment of ability to relate to bosses, coworkers, and the general public, a "mild"impairment of ability to sustain attention and concentration to complete daily tasks, and a "moderate" limitation of ability to tolerate stress. (Id.). The ALJ's findings were consistent with this opinion as well.

Dr. Thor Tangvald treated Sinclair for her mental problems. Dr. Tangvald noted a diagnosis of bipolar disorder, general anxiety disorder, and post traumatic stress disorder. (Tr. 497). The doctor identified a number of very severe mental restrictions on a Mental Medical Assessment of Ability to do Work-Related Activities including a "poor/none" ability in such areas as relating to coworkers, dealing with the public, interacting with supervisors, dealing with work stresses, maintaining attention and concentration, dealing with complex job instructions, and demonstrating reliability and a "fair" ability in following work rules, using judgment, functioning independently, dealing with detailed instructions, behaving in an emotionally stable manner, and relating predictably in social situations. (Tr. 497-498). When these restrictions were presented to Breslin, the expert could name no jobs which would be available. (Tr. 1010). The ALJ rejected the opinion of Dr. Tangvald as binding and the plaintiff asserts that this action was erroneous. (Tr. 35). However, the ALJ noted a number of reasons to support her opinion. For

13

example, despite Dr. Tangvald's claim that the claimant was unreliable, the record revealed she was routinely able to keep her doctor appointments and attend AA meetings.  (Id.).  While the doctor indicated extremely limited social functioning, Sinclair had been able to meet and establish a live-in relationship with a new boyfriend, interact with her AA sponsor, sponsor a member, and babysit for a relative.  (Tr. 35-36).  The ALJ also cited the testimony of Rogers who opined that Dr. Tangvald's restrictions were not well supported by his treatment records which indicated that most of the time, the plaintiff had been seen by a staff therapist rather than the doctor.  (Id.).  Rogers also indicated that her ability to engage in psychological testing revealed an ability to concentrate.  (Tr. 36, 987-988).  Therefore, under these circumstances, the court finds no error.

Psychologist Robert Noelker examined Sinclair and diagnosed major depression, an anxiety disorder and alcohol dependence in remission.  (Tr. 751).  Noelker identified a number of severe mental limitations including "marked" limitations of ability to deal with complex instructions, make judgments on complex work-related decisions, interact with the public, supervisors, and coworkers, and respond appropriately to changes in a routine work setting.  (Tr. 753-754).  The ALJ rejected the opinion.  (Tr. 35).  As a one-time examiner, Noelker's opinion is offset by that of the equally-placed Rosenthal.  Therefore, the opinion was not binding on the ALJ and was properly rejected by her.

Finally, the staff at North Key Community Care, a treating source, identified extremely severe mental limitations on a September, 2006 assessment including a "poor/none" ability to deal with work stresses and a "fair to poor/none" ability to deal with the public, function independently, maintain attention and concentration, behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability.  (Tr. 493-494).  The assessment was signed by Ann Wofford, a registered nurse-practitioner, and Many Bilyeu, a licensed clinical social worker.  (Tr. 495).  Under the administrative regulations, licensed clinical social workers and nurse-practitioners are not considered to be "acceptable medical sources" whose opinions would be binding on the administration.  20 C.F.R. § 404.1513.  Therefore, these opinions were not binding on the ALJ.

The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration of Sinclair's physical condition.  While the plaintiff notes that this action has been pending since filing her DIB application in August of 2004 and desires an immediate award, a judicial award of benefits is only proper where the proof of disability is overwhelming and contrary evidence lacking.  Faucher v. Secretary of Health and Human Services, 17 F.3d 171, 176 (6th Cir. 1994).  Unfortunately for the plaintiff, the evidence is not overwhelming, making a remand of the action for further consideration the appropriate remedy.  The claimant has also asked the court to order that the case be assigned to a different ALJ upon remand.  Sinclair's

representative indicated in a letter to the ALJ a belief that she was biased against him and his clients but provided no specific evidence to support this assertion.  (Tr. 438-439).  Without specific evidence of bias, the undersigned can take no action. A separate judgment and order will be entered simultaneously consistent with this opinion.

       This the 21st day of April, 2011.

**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**